NO. 07-06-0301-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

MARCH 31, 2008
_____

THE CITY OF GREY FOREST, APPELLANT

V.

GLEN W. VERNON AND DENISE G. VERNON
AND PAUL GRANADO, APPELLEES
_____

FROM THE 131ST DISTRICT COURT OF BEXAR COUNTY;

NO. 2002-CI-09980; HONORABLE JOE F. BROWN, JR., JUDGE
_____

Before QUINN, C.J. and HANCOCK and PIRTLE, JJ.

_____**OPINION**

The City of Grey Forest ("Grey Forest") appeals the trial court's judgment in favor of appellees, Glen W. Vernon, Denise G. Vernon, and Paul Granado, and award of damages and attorney fees. We reverse and render judgment.

Background

On August 18, 1971, Grey Forest annexed 47.67 acres of land, commonly referred to as the "Coggeshall subdivision," into the city limits. On February 26, 1995, the Vernons

entered into an earnest money contract with Mac Peck and Douglas Peterson to purchase 5.0106 of an 11.4178 acre tract of land within the Coggeshall subdivision for $23,000. In the earnest money contract, a provision stated that the buyers were accepting the property in its present condition. Further, the earnest money contract stated that it was the Vernons' intent to use the property as a single family dwelling and provided the Vernons with the option to terminate the contract to purchase the property if the Vernons "ascertain that applicable zoning ordinances, easements, restrictions or governmental laws, rules, or regulations prevent such intended use or that such required utilities are not available . . . ." The closing date for the sale of the property was set by the parties as November 24, 1997. On April 14, 1995, Grey Forest recorded a sanitary control easement on a property adjacent to the Vernons' property that prohibited all construction or operations that could create an unsanitary condition within, upon, or across the city's property. The city's property contained two wells used as a source of water for the city's public water system.

On September 6, 1995, the city council of Grey Forest voted to begin an inquiry into the feasibility of providing utility services to the Coggeshall subdivision including the possibility of paving Requa Road. On February 14, 1996, the Mayor of Grey Forest, Edwin Faust, sent a letter to the property owners of the Coggeshall subdivision informing the owners that the city, "in an effort to obtain city services to [the homes]," was seeking the owners' commitment to convey an easement to the City. The letter also expressed that "we [the city] would like to continue the existing easements to create a continuous road." Attached to the letter, a proposed roadway was highlighted that proceeded north-south through the Vernons' property and turned east-west along the southern border of the

2

Vernons' property and the city's property. Both ends of the proposed Requa Road curved to the west and connected to another roadway, Nottingham Lane.

On April 16, 1997, a second letter on City of Grey Forest letterhead was sent to the mortgage companies with property interests in the Coggeshall subdivision. This second letter explained that Coggeshall residents had requested that private access to their property become public access and that Grey Forest had agreed to provide services and a paved roadway once the existing easements had been designated as public. On July 1, 1997, the property owners, including Peck and Peterson, dedicated a street and utility easement to Grey Forest. Attached to the easement dedication showing the easement granted to the city was a plat showing a proposed roadway differing from the proposed easement attached to the February 14, 1996 letter. The deviation changed the easement along the southern boundary of the city's property to an easement through the city's property. However, Grey Forest is not listed as a grantor on the street and utility easement dedication. Instead, Grey Forest was the recipient of the easement.

On November 24, 1997, the Vernons closed on the subject property and received a warranty deed for the property. At the time of closing, no roadway existed on the property. Although the earnest money contract contained a provision allowing the Vernons to terminate the contract if applicable easements prevented the intended use of the property, no evidence was presented as to whether the Vernons questioned the reduction of acreage in the conveyance, or questioned Peck and Peterson as to the conveyance of an easement in exchange for the promise of utilities or a paved road. On February 23, 1999, the Grey Forest city council voted and passed Ordinance 118 accepting the

dedication of the street and utility easement of July 1, 1997 as a public street and right of way.

The Grey Forest council then requested bids from contractors for the Requa project. In its request, the city asked for bids for the project as a whole as well as for bids separating the project into two parts, lower Requa Road and upper Requa Road. The city council voted, on July 1, 1999, to reject the sole bid that Grey Forest received on the Requa Road project as a whole. Instead, the city accepted a bid for lower Requa Road and the council voted, on January 25, 2000, to end the project at the southern boundary of the Vernons' property. The city's decision resulted in the Vernons having the paved Requa Road and utility lines end at their southermost property line. In February of 2000, the Vernons sold a subsection of their property nearest the city's property to Paul Granado; the Granado property did not have access to the paved Requa Road or the utility lines ending at the Vernons' property. Shortly after the sale of property to Granado, the city erected a fence around its property in order to safeguard the city's water supply which had the effect of blocking direct access to Nottingham Lane from Vernons' and Granado's property.

The Vernons filed suit seeking a declaratory judgment against the city to enforce an agreement they alleged that the city made to build a continuous road and provide utilities in exchange for a grant of an easement over their property. Additionally, the Vernons contended that Grey Forest breached a contract to build a continuous road and provide utilities or, in the alternative, were estopped from denying a duty to build the road and provide utilities in exchange for the granting of an easement. Granado joined as an

intervenor seeking to enforce a similar agreement contending that he relied, to his detriment, on the city's promise to build a continuous road and utilities. In addition, the Vernons complained that, although Grey Forest had never affirmatively granted them permission to access their property from Nottingham Lane across the city's property, the agreement to build a continuous loop obligated the city to allow them access to Nottingham Lane across the city's property. A trial was held before the court on January 30 through February 1, 2006. At the conclusion of the trial, the trial court ruled in favor of the Vernons and Granado and awarded the Vernons $23,000 and Granado $18,000 in damages, with the Vernons and Granado also recovering attorney fees.

Additionally, the trial court made findings of fact and conclusions of law. The trial court found that Grey Forest had agreed, by motion of the city council, to pursue the feasibility of constructing a continuous loop between Requa Road and Nottingham Lane. The trial court also found that Grey Forest had agreed to create a continuous loop through the subdivision in exchange for an easement and that Grey Forest ratified the agreement to pave Requa Road and provide utilities by acknowledging the Requa Road project during council meetings, but that the city had failed to pave upper Requa Road. Additionally, the trial court found that the Vernons and Granado substantially and reasonably relied, to their detriment, upon Grey Forest's promise to build a continuous loop, and further found that the Vernons and Granado were damaged by Grey Forest's failure to pave upper Requa Road.

However, the trial court also concluded that the Vernons entered into an earnest money agreement on or about February 27, 1995, and that Grey Forest did not, by vote

5

of council, promise the Vernons or Granado that it would construct a loop between Requa Road and Nottingham Lane. Additionally, the trial court concluded that the Vernons and Granado did not have reasonable access to their property. The trial court further concluded that Grey Forest's decisions to end construction of the paved road at the southern border of the Vernon's property, to fence off its well site property, whether or not to improve an easement, and when to open a dedicated street for public use, were all governmental functions supported by legitimate governmental interests.

Grey Forest appeals the judgment by eight issues contending that the trial court erred by (1) finding that Grey Forest agreed to improve and pave a loop in exchange for an easement; (2) finding that Grey Forest recognized or ratified the alleged agreement; (3) finding that the Vernons and Granado substantially and reasonably relied upon the agreement to their detriment; (4) admitting city council minutes to prove the ratification of the agreement; (5) finding that the Vernons and Granado had standing because they did not have adequate city services equal to other citizens; (6) finding that Grey Forest denied the Vernons and Granado access to their property by barricading the city's well site; (7) awarding damages; and (8) awarding attorney fees. Because of the relatedness of the issues, we will begin our analysis by reviewing issues one, two, and three.

Law and Analysis

Under an abuse of discretion standard, the appellate court determines if the trial court acted arbitrarily and unreasonably, and thus abused its discretion. See Morrow v. H.E.B., Inc., 714 S.W.2d 297, 298 (Tex.1986). The reviewing court may not reverse the

6

trial court for an abuse of discretion because it disagrees with the trial court's decision so long as that decision is within the trial court's discretionary authority. Beaumont Bank v. Buller, 806 S.W.2d 223, 226 (Tex.1991); Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 242 (Tex.1985). Unless the trial court's factual determinations were arbitary and unreasonable, the reviewing court may not substitute its judgment for the trial court's decisions committed to its discretion. See Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992). However, the trial court has no discretion in regard to questions of law. See Walker, 827 S.W.2d at 840. Interpretation of a statute is a pure question of law which is reviewed *de novo*. See Tex. Gen. Indem. Co. v. Tex. Workers' Comp. Comm'n, 36 S.W.3d 635, 640 (Tex.App.–Austin 2000, no pet.); Mitchell Energy Corp. v. Ashworth, 943 S.W.2d 436, 437 (Tex. 1997).

In reviewing the court's findings of fact, the trial court found that the city council did not vote nor sign any contract that would obligate it to pave a road or provide utilities to the residents of the Coggeshall subdivision. Thus, deferring to the trial court's findings, we conclude that Grey Forest has not entered into an enforceable contract with the Vernons or Granado. See Walker, 827 S.W.2d at 840.

We next review the trial court's findings on the Vernons and Granado's theory of promissory estoppel. Although the trial court found that neither the city council nor its mayor signed a contract, the trial court determined that the city council ratified the mayor's actions by taking actions consistent with the mayor's alleged promise to provide services in exchange for the granting of an easement. Since this is a fact issue, we again will defer to the trial court's finding. See City of Dallas v. Vills. of Forest Hills, L.P., 931 S.W.2d 601,

7

604 (Tex.App.–Dallas 1996, no writ) (officer of a city generally cannot bind or estop the city in a matter placed exclusively within the authority of the governing body unless the evidence clearly shows the officer's conduct so closely related to the expressed will of the governing body as to constitute an act of the body itself). And, though we defer to the trial court's factual findings, we review the trial court's application of the facts to the law *de novo*. See Tex. Gen. Indem. Co., 36 S.W.3d at 640.

A promisee is entitled to recover under the theory of promissory estoppel if (1) there was a promise; (2) the promisor could have reasonably foreseen that the promisee would rely on the promise; and (3) the promisee suffered a detriment as a result of the substantial reliance on the promise. See Sipco Servs. Marine, Inc. v. Watt Field Serv. Co., 857 S.W.2d 602, 605 (Tex.App.–Houston [1st Dist.] 1993, no writ). By its first three issues, Grey Forest argues that there was no agreement between Grey Forest and the Vernons or Granado, that it could not have ratified any such agreement, and that the Vernons or Granado could not have detrimentally relied on such an agreement. In essence, Grey Forest contends that promissory estoppel is not an available remedy to the Vernons or Granado. We agree.

At the time that the mayor sent letters to the property owners of the Coggeshall subdivision, the only possible basis of the ratified agreement, the promisees would have been Peterson and Peck. But no evidence was presented as to whether Peterson and Peck detrimentally relied on the city's promise. Instead, the evidence in this case focused on how the Vernons and Granado were detrimentally affected based on a substantial reliance on the ratified agreement; however, neither the Vernons nor Granado were a

8

promisee of the city's ratified agreement. Therefore, we conclude that, as a matter of law, Vernon and Granado have presented no evidence demonstrating proof of each element necessary to establish recovery based on promissory estoppel, specifically that the promisees, Peterson and Peck, suffered to their detriment because of their substantial reliance on the city's ratified agreement.

The Vernons and Granado also sought to estop the city from denying its responsibility, under the ratified agreement, to provide a paved road and utilities by asserting their status as successors in interest to the promise made to Peterson and Peck. But unless the promise is found to be enforceable, any potential beneficiary of such a promise does not gain rights from the alleged promise. See Young Ref. Corp. v. Pennzoil Co., 46 S.W.3d 380, 387 (Tex.App.–Houston [1st Dist.] 2001, pet. denied). In fact, without a showing that the Vernons and Granado were intended beneficiaries, the presumption is against conferring benefits to third parties. Id. The Vernons and Granado did not present evidence demonstrating that Peterson and Peck detrimentally suffered or that they were intended third party beneficiaries. Hence, without establishing that Peterson and Peck could have relied on the theory of promissory estoppel, the Vernons and Granado cannot, as third party beneficiaries, estop the city under promissory estoppel. See id. Thus, we conclude that there is no evidence to support the trial court's judgment. Additionally, on issue seven, we conclude that, with no evidence to support the judgment, the Vernons and Granado are not entitled to damages under a contractual theory or promissory estoppel.

9

In our determination of issues one, two, and three, we have presumed as correct the trial court's decisions on admission of the city council's minutes (issue four), the determination that the Vernons and Granado did not have services equal to other residents (issue five), and that the city prevented access by the Vernons and Granado to Nottingham Lane by fencing its property (issue six). All of these findings were factual determinations within the trial court's discretionary authority. Since we have reversed the trial court's judgment, even with these presumptions, we will forego further discussion of those issues. TEX. R. APP. P. 47.1.

On issue eight, the decision to award attorney fees is reviewed under the abuse of discretion standard. See Crouch v. Tenneco, Inc., 853 S.W.2d 643, 646 (Tex.App.–Waco 1993, writ denied). A review of the Vernons and Granado's Amended Petition for Writ of Mandamus, Injunction, Declaratory Judgment, and Breach of Agreement shows that the Vernons and Granado sought attorney fees under the Declaratory Judgments Act and as a result of breach of the agreement. With the trial court having concluded that there was no contract between Grey Forest and the Vernons or Granado, and with our conclusion that the Vernons and Granado failed to establish promissory estoppel as a party or as a third party beneficiary, the Vernons and Granado are not entitled to damages or attorney fees under the theories of breach of contract or promissory estoppel. Under the Declaratory Judgments Act, the act provides that a person interested under a deed or other writing constituting a contract may have the court determine any question of construction or validity arising under the instrument and obtain a declaration of rights, status, or other legal relations under it. TEX. CIV. PRAC. & REM.CODE ANN. § 37.004(a) (Vernon Supp.

10

2007). It also provides that the court may award costs and attorney fees. Id. § 37.009. However, declaratory relief may not be used solely as a vehicle to obtain attorney fees and is inappropriate if it will serve no useful purpose. Boatman v. Lites, 970 S.W.2d 41, 43 (Tex.App.–Tyler 1998, no pet.). The Vernons' and Granado's request for declaratory judgment presented no issues beyond those already raised and have no greater ramifications than the claims for breach of contract or promissory estoppel. Therefore, we agree with Grey Forests' eighth issue and find no basis for the award of attorney fees to the Vernons and Granado.

## Conclusion

For the foregoing reasons, we reverse and render a judgment that the Vernons and Granado take nothing on their claims on damages and attorney fees under breach of contract, promissory estoppel, or under the Declaratory Judgments Act.


Mackey K. Hancock
Justice

11