Opinion filed June 4, 2026



In The

# Eleventh Court of Appeals

_____

## No. 11-24-00320-CV

_____

## RYAN ALAN BROWN AND HUNTER BRENT BROWN, Appellants

## V.

## ENDEAVOR ENERGY RESOURCES, L.P., Appellee

**On Appeal from the 441st District Court**
**Midland County, Texas**
**Trial Court Cause No. CV59143**

## M E M O R A N D U M   O P I N I O N

This case involves a breach-of-contract action by Appellee, Endeavor Energy Resources, L.P. (Endeavor), wherein Endeavor sought the return of payments for oil and gas overriding royalty interests (ORRIs) that were allegedly paid in error to Appellants, Ryan Alan Brown and Hunter Brent Brown (the Browns). The parties

each claimed ownership of ORRIs originally owned by Randy A. Brown, the father of Appellants, and assigned to Endeavor's predecessor-in-interest, Atlantic Richfield Company (ARCO); the assignment expressly stated that it was "made subject to the terms and conditions" of an unrecorded letter agreement between Randy and ARCO. In two issues, the Browns argue that the trial court erred in granting summary judgment in favor of Endeavor in that (1) Endeavor failed to establish as a matter of law that the Browns did not own the ORRIs because the original assignment to ARCO from Randy was "made subject to the terms and conditions" of an unrecorded letter agreement, which was not produced by Endeavor; and (2) the Browns presented evidence that created a fact issue regarding their affirmative equitable defenses, including estoppel and waiver.

We reverse and remand.

## I. *Factual and Procedural Background*

Randy worked for Endeavor as a geologist and obtained ORRIs in multiple sections in the Permian Basin as part of his employment compensation.[1] Randy obtained the ORRIs that are the subject of this appeal on May 1, 1997, when Terrace Petroleum Corporation conveyed a 2.125% ORRI for two oil and gas leases. On October 13, 1997, Randy conveyed a 1.125% ORRI in one of the leases to Earl H. Michie, and on November 30, 1998, Randy assigned his remaining ORRI in both leases to ARCO. The ARCO assignment described the two leases to which the ORRIs pertain and stated that the assignment was "made subject to the terms and conditions of that certain unrecorded Letter Agreement dated November 13, 1998

---

[1]"An overriding royalty interest is a non-participating interest in the oil and gas produced at the surface, free of production expenses, carved out of the working interest under a mineral lease." *Piranha Partners v. Neuhoff*, 596 S.W.3d 740, 742 n.2 (Tex. 2020).

between Assignor and Assignee, and to any existing contracts or obligations of record affecting the above described lands or lease."

After Randy passed away in July 2018, the Browns inherited his holdings. Endeavor sent the Browns numerous division orders for the subject ORRIs, which identified the Browns as the presumed owners. The division orders, signed by the Browns, contained a clause that stated, "Payee agrees to refund to payor any amounts attributable to an interest or part of an interest that payee does not own." Endeavor paid the Browns production proceeds attributable to the ORRIs.

On March 7, 2019, Kelly Hinsley of Endeavor e-mailed Ryan a copy of a tax warrant stating, "Your father no longer owns any interest in the properties listed on the Tax warrant and has not for quite some time. Thought you might want to get this cleared up with Brandon and Perdue." The Browns paid the past due taxes on the ORRIs and continued to pay taxes through 2023.

Endeavor later discovered the ARCO assignment, which indicated that Endeavor owned the ORRIs as a successor-in-interest to ARCO. By that point, Endeavor had made ORRI payments to the Browns totaling $2,319,734.20 for production from April 1, 2018, through February 1, 2022. The Browns declined Endeavor's request to refund the payments, and Endeavor filed suit asserting claims for breach of contract as well as money had and received.

Endeavor filed a motion for partial summary judgment on its breach-of-contract claim, arguing that its summary-judgment evidence conclusively established that the Browns breached the division orders by failing to refund Endeavor for payments on ORRIs that the Browns did not own. Endeavor attached the following exhibits: the affidavit of Chase Simpson; division orders; accounting summaries; assignment records; and attorney's fees evidence. Simpson, a mineral landman for Endeavor, testified that Randy was "divested" of any interest in the

ORRIs through his assignment to ARCO. He also summarized the division orders and accounting records, providing the duration and total amount of the payments to the Browns. Simpson testified that the Browns refused to refund the payments despite Endeavor's request.

The Browns filed a response, arguing that Endeavor failed to establish as a matter of law that the Browns did not own the ORRIs. The Browns highlighted language from the ARCO assignment referencing that it was "made subject to the terms and conditions" of an unrecorded letter agreement. The Browns claimed that without Endeavor including the letter agreement, it could not establish that the Browns do not still own the ORRIs. The Browns noted that they requested the letter agreement in discovery, but Endeavor failed to produce it. The Browns also argued that there were fact issues regarding the affirmative defense of offset, and the affirmative equitable defenses of estoppel, quasi-estoppel, and waiver. *See* TEX. R. CIV. P. 94. The Browns attached the following summary-judgment evidence to their response: (1) the affidavit of Ryan; (2) e-mail correspondence with Endeavor; (3) tax records; and (4) Endeavor's discovery responses.

The Browns filed a contemporaneous objection to Simpson's affidavit, claiming certain portions were conclusory or constituted legal conclusions. Following a hearing, the trial court entered orders sustaining the Browns' evidentiary objections—striking all but the first, third, and last paragraph of Simpson's affidavit—and granting Endeavor's motion for partial summary judgment. The trial court concluded that the Browns breached the division orders and awarded Endeavor $2,319,734.20 in damages, as well as attorney's fees. The Browns filed a motion for reconsideration and a motion for new trial. The trial court granted the Browns' motion for reconsideration in part, ordering an offset of $32,988.44 for the amount

the Browns paid for property taxes. After Endeavor non-suited its remaining claim, the trial court signed a final judgment. The Browns appealed.

## II. *Standard of Review*

We review the trial court's ruling on a summary judgment motion de novo. *Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 837 (Tex. 2018). A party moving for traditional summary judgment bears the burden of proving that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c);[2] *ConocoPhillips Co. v. Koopmann*, 547 S.W.3d 858, 865 (Tex. 2018). A plaintiff movant must conclusively prove all essential elements of its cause of action as a matter of law. *Draughon v. Johnson*, 631 S.W.3d 81, 87–88 (Tex. 2021). "Evidence is conclusive only if reasonable people could not differ in their conclusions." *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005). If the movant meets its burden, then the burden shifts to the non-movant to present to the trial court any issues or evidence that would preclude summary judgment. *Duncan v. Hindy*, 590 S.W.3d 713, 719 (Tex. App.—Eastland 2019, pet. denied) (citing *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex. 1979)).

To determine if a genuine issue of material fact exists, we review the evidence in the light most favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *KMS Retail Rowlett, LP v. City of Rowlett*, 593 S.W.3d 175, 181 (Tex. 2019). We credit evidence favorable to the nonmovant if reasonable jurors could do so, and we disregard

---

[2]We note that the Texas Supreme Court has recently revised Rule 166a. Although the "rewrite is not intended to substantively change the law," it has resulted in a renumbering of the provisions of the rule. *See* Final Approval of Amendments to Rule 166a of the Texas Rules of Civil Procedure, Misc. Docket No. 26-9012 (Tex. Feb. 27, 2026). The amendments to this rule only apply to motions for summary judgment filed on or after March 1, 2026. Because the motion for summary judgment in this case was filed prior to that date, we refer to the rule in effect at the time the motion was filed. *See id.*

contrary evidence unless reasonable jurors could not. *Samson Expl., LLC v. T.S. Reed Props., Inc.*, 521 S.W.3d 766, 774 (Tex. 2017); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding,* 289 S.W.3d 844, 848 (Tex. 2009). The evidence raises a genuine issue of material fact if reasonable and fair-minded factfinders could differ in their conclusions in light of all of the summary judgment evidence presented. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007).

To defeat summary judgment by raising an affirmative defense, the nonmovant must plead the defense while also producing evidence that raises a genuine issue of material fact as to each element of the defense. *Lujan v. Navistar Fin. Corp.*, 433 S.W.3d 699, 704 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (first citing *Lunsford Consulting Grp., Inc. v. Crescent Real Estate Funding VIII, L.P.*, 77 S.W.3d 473, 475–76 (Tex. App.—Houston [1st Dist.] 2002, no pet.); and then citing *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984)).

### III. *Breach of Contract*

In their first issue, the Browns argue that the trial court erred in granting summary judgment on Endeavor's breach-of-contract claim because Endeavor failed to prove as a matter of law that the Browns did not own the ORRIs.

#### A. *Applicable Law*

The elements of a breach-of-contract claim are: (1) a valid contract, (2) the party suing to enforce the contract performed or tendered performance, (3) the other party breached the contract, and (4) the suing party was damaged as a result of the breach. *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018). Division orders are "the mechanism for payment to a payee of its share of oil and gas proceeds." *Perdido Properties LLC on Behalf of Bremer v. Devon Energy Prod. Co., L.P.*, 669 S.W.3d 535, 547–48 (Tex. App.—Eastland 2023, pet. denied) (quoting *Prize Energy Res., L.P. v. Cliff Hoskins, Inc.*, 345 S.W.3d 537, 560 (Tex.

6

App.—San Antonio 2011, no pet.), *abrogated on other grounds by Nath v. Tex. Children's Hosp.*, 576 S.W.3d 707 (Tex. 2019)). The Natural Resources Code permits a payor to require a signed division order "[a]s a condition for the payment of proceeds from the sale of oil and gas production." TEX. NAT. RES. CODE ANN. § 91.402(c)(1) (West Supp. 2025). Division orders are binding until terminated. *See id.* § 91.402(g); *see also Cabot Corp. v. Brown*, 754 S.W.2d 104, 107–08 (Tex. 1987); *Gavenda v. Strata Energy, Inc.*, 705 S.W.2d 690, 691 (Tex. 1986).

An ORRI "is the share of the oil or gas produced reserved in [an] assignment, part assignment, or sublease of an oil and gas lease payable to the assignor by the assignee over and above the royalty reserved in the lease payable to the lessor." *EOG Res., Inc. v. Hanson Prod. Co.*, 94 S.W.3d 697, 701 (Tex. App.—San Antonio 2002, no pet.). "It derives from and burdens the lease, and absent agreement otherwise, terminates when the lease itself terminates." *Piranha Partners*, 596 S.W.3d at 742 n.2 (citing *Apache Deepwater, LLC v. McDaniel Partners, Ltd.*, 485 S.W.3d 900, 905 (Tex. 2016)). Because the validity of the ORRI depends on the lease, "one of the most essential elements of a contract for the conveyance of such an overriding royalty interest is a description of the lease from which it comes; for it is the lease which denotes the life and breadth of the estate to be assigned." *Id.* (quoting *Gruss v. Cummins*, 329 S.W.2d 496, 501 (Tex. App.—El Paso 1959, writ ref'd n.r.e.)).

When interpreting an assignment of ORRIs, "[a]s with any deed or contract, our task is to determine and enforce the parties' intent as expressed within the four corners of the written agreement." *Id.* at 743 (citing *Perryman v. Spartan Tex. Six Cap. Partners, Ltd.*, 546 S.W.3d 110, 117–18 (Tex. 2018)). "We consider the entire agreement and, to the extent possible, resolve any conflicts by harmonizing the

agreement's provisions, rather than by applying arbitrary or mechanical default rules." *Id.* at 744 (citing *Wenske v. Ealy*, 521 S.W.3d 791, 792, 796 (Tex. 2017)).

If an instrument is expressly made "subject to" or "pursuant to" a second instrument, "the parties intended [them] to be construed together." *Thagard Min. P'ship, LP v. Cass*, 726 S.W.3d 871, 881 (Tex. App.—Eastland 2025, pet. denied) (quoting *Burlington Res. Oil & Gas Co. LP v. Tex. Crude Energy, LLC*, 573 S.W.3d 198, 208 (Tex. 2019)). "The words 'subject to,' used in their ordinary sense, mean subordinate to, subservient to or limited by." *Wenske*, 521 S.W.3d at 796 (quoting *Kokernot v. Caldwell*, 231 S.W.2d 528, 531 (Tex. App.—Dallas 1950, writ ref'd)). "Subject to" clauses limit the estate and associated rights that are granted and warranted to a party. *Averyt v. Grande, Inc.*, 717 S.W.2d 891, 894 (Tex. 1986). "Subject-to clauses are also used when the property to be conveyed is subject to an outstanding mineral lease and that lease is to be maintained after the conveyance." *Wenske*, 521 S.W.3d at 796–97.

"[T]he general rule in oil and gas law [is] that controversies regarding assignors and assignees are governed by the construction and interpretation of the provisions of the assignment itself and the collateral contracts of the parties." *EOG Res.,* 94 S.W.3d at 702–03; *see Phillips v. Inexco Oil Co. Inc.*, 540 S.W.2d 546, 548 (Tex. App.—Tyler 1976, writ ref'd n.r.e.) (considering the assignment and a letter agreement the assignment was made subject to in determining the rights of the assignor and assignee). As such, an assignment that expressly states that it is subject to a letter agreement incorporates that letter agreement by reference. *EOG Res.*, 94 S.W.3d at 702.

"It is well settled that a purchaser is bound by *every* recital, reference and reservation contained in or fairly disclosed by any instrument which forms an essential link in the chain of title under which he claims." *Apache Corp. v. Apollo*

8

*Expl., LLC*, 670 S.W.3d 319, 335 (Tex. 2023) (quoting *Westland Oil Dev. Corp. v. Gulf Oil Corp.*, 637 S.W.2d 903, 908 (Tex. 1982)); *see BK Park, LTD v. WBRE, LLC*, 725 S.W.3d 462, 467 (Tex. App.—Houston [14th Dist.] 2025, no pet.).  An instrument's reference to a document imposes a duty on a purchaser to inspect the referenced document in order to "enjoy the status of innocent purchaser[]." *Westland*, 637 S.W.2d at 908 (holding that in an assignment of an oil and gas interest that a purchaser was bound by reference to a letter agreement in an unrecorded operating agreement).[3]

> The rationale of the rule is that *any* description, recital of fact, or reference to other documents puts the purchaser upon inquiry, and he is bound to follow up this inquiry, step by step, from one discovery to another and from one instrument to another, until the whole series of title deeds is exhausted and a complete knowledge of *all the matters referred* to and affecting the estate is obtained.

*Id.* (quoting *Loomis v. Cobb*, 159 S.W. 305, 307 (Tex. App.—El Paso 1913, writ ref'd)).  "An entirely different result might obtain on the issue of notice if, upon diligent inquiry and search," a purchaser was unable to obtain a copy of a document referenced in the chain of title.[4]  *Id.*  The terms of a deed or other document may be

---

[3]The letter agreement in *Westland Oil Development Corp. v. Gulf Oil Corp.*, involved the assignment of an interest in a farmout agreement.  637 S.W.2d at 906–08.  "A farmout is a common form of agreement between operators, in which a lease owner that does not want to drill assigns the lease, or some portion of it, to another operator that does." *Young Refin. Corp. v. Pennzoil Co.*, 46 S.W.3d 380, 389 (Tex. App.—Houston [1st Dist.] 2001, pet. denied).  "*The primary characteristic of the farmout is the obligation of the assignee to drill one or more wells* on the acreage as a prerequisite to completion of the transfer." *Id. (emphasis in original)*; *see Mengden v. Peninsula Production Co.*, 544 S.W.2d 643, 645 n.1 (Tex. 1976).  "[F]armout and related agreements, as executory instruments, normally are not recorded at the time of execution, since title is yet to be earned." *TransTexas Gas Corp. v. Forcenergy Onshore, Inc.*, No. 13-02-387-CV, 2004 WL 1901717, at *7 (Tex. App.—Corpus Christi–Edinburg Aug. 26, 2004, pet. denied) (mem. op.).

[4]As Endeavor notes in its post-submission letter brief, Standard 4.60 of the Texas Property Code's Title Examination Standards relies on this statement of law when addressing a title examiner's duty to advise clients of matters disclosed by recitals in instruments appearing in the chain of title. *See* Tex. Title Examination Standards, Standard 4.60, cmt., *reprinted in* TEX. PROP. CODE., tit. 2, app.

established by other evidence of its contents if the document is lost or destroyed and the loss or destruction of the document is established by proof of search for this document and inability to find it. *See* TEX. R. EVID. 1004(a); *Gause v. Gause*, 496 S.W.3d 913, 917 (Tex. App.—Austin 2016, no pet.); *see also Travis Cty. Water Control & Improvement Dist. No. 12 v. McMillen*, 414 S.W.2d 450, 452 (Tex. 1966) ("Secondary evidence of the contents of a document directly in issue is inadmissible unless nonproduction of the original document is accounted for."); *Bennett v. Romos*, 252 S.W.2d 442, 445 (Tex. 1952); *but see also* TEX. R. EVID. 1004 (b)–(e) (that include additional current provisions allowing admissibility of other evidence of content when the original is not available).

B. *Analysis – The Letter Agreement*

Endeavor's breach-of-contract action was premised on the following provision of the division orders: "Payee agrees to refund to payor any amounts attributable to an interest or part of an interest that payee does not own." To demonstrate that the Browns received payments for an interest they did not own, Endeavor relied on the language of the ARCO assignment, by which Randy assigned all of his interest; however, the assignment was "made subject to the terms and conditions of that certain unrecorded Letter Agreement dated November 13, 1998 between Assignor and Assignee, and to any existing contracts or obligations of record affecting the above described lands or lease." The parties' primary arguments discuss the significance of the letter agreement's absence from the summary judgment record.

The Browns argue that without producing the letter agreement, Endeavor did not establish its claimed ownership of the ORRIs as a matter of law. They note that a document referenced in a conveyance is a part of the chain of title. They argue that the letter agreement must be consequential to title because: the leases that the

10

assignment references were producing; taxes were assessed against Randy in 2019; ARCO never made a known title claim; and Endeavor's title claim is subject to the letter agreement. The Browns posit that "[t]he fact that ARCO did not maintain a copy of the Letter Agreement, coupled with its lack of title claims, informs the conclusion that ARCO did not believe it owned the [ORRIs]." Endeavor responds that its failure to produce the letter agreement does not create a genuine issue of material fact as to who owns the ORRIs because it is "sheer speculation" that the letter agreement contradicts the assignment of Randy's interest. Endeavor also maintains that Randy could not have legally reserved any interest in the ORRIs because the letter agreement was created before the ARCO assignment, and a reservation of interest must be made at the time of the conveyance. We agree with the Browns.

Endeavor as the successor-in-interest to ARCO "is bound by *every* recital, reference and reservation contained in or fairly disclosed by any instrument which forms an essential link in the chain of title under which [it] claims." *Apache Corp.*, 670 S.W.3d at 335. When interpreting the assignment, we must consider all of its provisions in their entirety, including those incorporated by reference; therefore, the ARCO assignment and the letter agreement must be construed together. *See Westland*, 637 S.W.2d at 908; *Thagard Min. P'ship*, 726 S.W.3d at 881; *EOG Res.*, 94 S.W.3d at 701–02. Further, by its plain language, the ARCO assignment is subordinate to the terms of the letter agreement. *See Wenske*, 521 S.W.3d at 796.

Endeavor, as the summary-judgment movant, presented evidence that painted an incomplete picture regarding title to the ORRIs. *See Draughon*, 631 S.W.3d at 87. For a number of reasons, it would be inappropriate at this stage to draw *any* inference regarding title to the ORRIs solely from the ARCO assignment. First, "[a]n inference is not reasonable if [the evidence] is susceptible to multiple, equally

11

probable inferences, requiring the factfinder to guess in order to reach a conclusion." *Suarez v. City of Tex. City*, 465 S.W.3d 623, 634 (Tex. 2015). The ARCO assignment, with its reference to the letter agreement that it is subject to, gives rise to multiple inferences concerning whether the assignment was effective, none of which is more likely to be true. *See Raymond James & Associates, Inc. v. Christensen*, 714 S.W.3d 886, 893 (Tex. App.—Houston [1st Dist.] 2025, pet. denied) (citing *Hancock v. Variyam*, 400 S.W.3d 59, 70–71 (Tex. 2013)). Second, if the letter agreement was lost or destroyed, Endeavor must present evidence of that fact,[5] which would serve as the predicate for the admissibility of alternative evidence of the document's contents. *See* TEX. R. EVID. 1004; *McMillen*, 414 S.W.2d at 452–53; *Gause*, 496 S.W.3d at 917. On this record, Endeavor did not establish as a matter of law that Randy effectively assigned his interest in the ORRIs to ARCO. Further, as noted by the Browns, there exists circumstantial evidence that the Browns retained ownership over the relevant time period—payment of the ORRIs was continually made to the Browns by Endeavor, the operator and now claimant of the ORRIs; the tax records continued to reflect Randy as owner of the ORRIs; and ARCO never made a claim of ownership.

For the foregoing reasons, we conclude that there exists a genuine issue of material fact concerning whether the Browns breached the division orders by failing to refund to Endeavor amounts attributable to an interest that the Browns did not own. *See Draughon*, 631 S.W.3d at 87. Therefore, the trial court erred in granting Endeavor's motion for summary judgment. *See Valence Operating Co. v. Dorsett*,

---

[5]Endeavor claims by way of an answer to an interrogatory that it could not locate the letter agreement after a diligent search. However, generally, a party cannot rely on its own interrogatory answers as competent summary judgment evidence. *See* TEX. R. CIV. P. 197.3; *see also Dalehite v. Nauta*, 79 S.W.3d 243, 245 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) (citing *Morgan v. Anthony*, 27 S.W.3d 928, 929 (Tex. 2000)).

164 S.W.3d 656, 661 (Tex. 2005).  We sustain the Browns' first issue.  Because of our resolution of this issue, we need not address the Browns' remaining issue.[6]  *See* TEX. R. APP. P. 47.1.

IV.  *This Court's Ruling*

We reverse the trial court's judgment, and we remand the case to the trial court for further proceedings consistent with this opinion.

W. BRUCE WILLIAMS

JUSTICE

June 4, 2026

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

---

[6]We also do not address Endeavor's argument that the trial court erred in striking portions of Simpson's affidavit.  We have found that the trial court erred notwithstanding this affidavit; we need not look to that "evidence" to hold that a genuine issue of material fact existed.