



## OPINION

No. 04-09-00573-CV

**ORIX CAPITAL MARKETS, LLC**; Bank of America, N.A.;
INR Partners, Inc.; Capmark Finance, Inc.; Nicholas M. Pyka as Trustee;
Michael N. Blue as Trustee; & Greta A. Goldsby as Trustee,
Appellants

v.

**LA VILLITA MOTOR INNS, J.V.**; Executive Motels of San Antonio, Inc.;
& Sunvest Hotels, Inc.,
Appellees

From the 150th Judicial District Court, Bexar County, Texas
Trial Court No. 2009-CI-07339
Honorable Barbara Hanson Nellermoe, Judge Presiding[1]

Opinion by:      Marialyn Barnard, Justice

Sitting:         Catherine Stone, Chief Justice
                 Phylis J. Speedlin, Justice
                 Marialyn Barnard, Justice

Delivered and Filed: August 25, 2010

REVERSED AND REMANDED

    This appeal concerns the enforcement of a commercial real estate note. After a bench trial,

the trial court entered judgment in favor of the note borrowers, appellees La Villita Motor Inns, J.V.,

---

[1] The Honorable Janet Littlejohn presides over the 150th Judicial District Court of Bexar County. However, the judgment in this case was signed by the Honorable Barbara Hanson Nellermoe, the presiding judge of the 45th Judicial District Court of Bexar County.

Executive Motels of San Antonio, Inc., and S.A. Sunvest Hotels, Inc. ("La Villita"), rendering judgment that the note holders, appellants ORIX Capital Markets, LLC, Bank of America, N.A., LNR Partners, Inc., Capmark Finance, Inc., Nicholas M. Pyka as Trustee, Michael N. Blue as Trustee, and Greta E. Goldsby as Trustee ("ORIX"), take nothing, permanently enjoining ORIX from foreclosing on the property securing the note, and enjoining any other party from seeking foreclosure for eighteen months from the date of the judgment. The trial court also awarded attorney's fees to La Villita. ORIX appeals, contesting the injunctive relief, the amount found to be due on the note, attorney's fees, and the sufficiency of the evidence. We reverse the trial court's judgment, and remand this matter for further proceedings and entry of judgment in accordance with our opinion.

## BACKGROUND

La Villita Motor Inns, J.V. is a joint venture consisting of Executive Motels of San Antonio, Inc. and S.A. Sunvest Hotels, Inc. Liaquat Pirani is the president of both Executive Motels of San Antonio, Inc. and S.A. Sunvest Hotels, Inc. Pirani is also the managing partner and principal of the joint venture. La Villita owns and operates the Riverwalk Plaza Hotel ("the Hotel"). In September 1998, La Villita borrowed $8.4 million from AMRESCO Capital, L.P. ("AMRESCO"), signing a Fixed Rate Note ("the Note") for that amount. The Note, which was dated September 25, 1998, was signed by Pirani on behalf of the joint venture. The Note required monthly payments of $56,874.97 for ten years, beginning October 1, 1998, with a final balloon payment due September 1, 2008, i.e., at the end of the ten years. The amount of the balloon payment is not reflected in the Note; however, ORIX asserts, based on an amortization schedule, the amount due at the end of ten years was $6,660,800.26. La Villita counters that this figure is merely ORIX's assertion of what the balloon

payment should be, noting there is nothing in the Note to support this amount, and no one told Pirani what the balloon payment would be when he signed the Note.

In addition to signing the Note, La Villita also executed other documents, including a "Mortgage, Deed of Trust and Security Agreement" ("Deed of Trust"), a "Security Agreement," an "Assignment of Leases and Rents," and an "Environmental Liabilities Agreement." These documents, collectively the "Loan Documents," were executed at the same time as the Note and were in favor of AMRESCO. Pursuant to the Deed of Trust, La Villita pledged the real property described therein, including the Hotel, as well as a security interest in all accounts, inventory, franchise agreements, books and records, all personal property related to the Hotel, and all proceeds generated or made payable from the operation of the Hotel. The Deed of Trust was filed in Bexar County in 1998.

At the time the Note and the other Loan Documents were executed, AMRESCO advised La Villita, through a paragraph in the Deed of Trust, that it intended to sell the Note:

> The Mortgagor acknowledges that the Mortgagee intends to sell the Loan evidenced by the Note and the Loan Documents or a participation interest therein to a party who may pool the Loan with a number of other loans and to have the holder of such loans (most likely a special purpose REMIC) issue one or more classes of Mortgage Backed Pass-Through Certificates (the "Certificate") which may be rated by one or more national rating agencies.

In accord with this paragraph, AMRESCO transferred the Note to GS Mortgage Securities Corporation II, Commercial Mortgage Pass-Through Certificates, Series 1999-C1 Trust ("the Trust"). On the date the Note was signed, AMRESCO endorsed it to AMRESCO Capital Limited, Inc., which in turn endorsed it to LaSalle National Bank, the trustee of the Trust. The Trust is the

owner and holder of the Note. LaSalle National Bank's holding company was acquired by Bank of America, N.A., and therefore Bank of America is the successor trustee to the Trust.

Pursuant to the Trust's "Pooling and Servicing Agreement" ("Servicing Agreement"), the duties of collecting note payments, holding and disbursing escrow funds, and performing most of the routine administrative functions with regard to the Note were delegated to a Master Servicer and a Special Servicer. The Master Servicer for the Note was always Capmark, formerly known as GMAC Commercial Mortgage Corporation. The Master Servicer services the Note until there is a default or default is imminent, at which time the servicing duties are transferred to the Special Servicer. The Special Servicer (and the Master Servicer) operates in accordance with the "Servicing Standard," which requires servicing of the Note:

> . . . in the best interest of and for the benefit of all the Certificateholders (as determined by the Master Servicer or Special Servicer as the case may be, in the exercise of its good faith and reasonable judgment) and in accordance with applicable law, the specific terms of the respective Mortgage Loan and this Agreement, and, to the extent not inconsistent with the foregoing, in the same manner in which, and with the same care, skill and diligence as is normal and usual in its general mortgage servicing . . . .

The Servicing Agreement also provides, with regard to the Servicing Standard, that in the event of a default, and if, in the "good faith and reasonable judgment of the Special Servicer, no satisfactory arrangements can be made for the collection of delinquent payments," the Special Servicer is required to maximize the recovery on the Note on a present value basis for the benefit of the Certificateholders. In the Servicing Agreement, Lennar Partners, Inc. ("Lennar") was appointed Special Servicer for the Note.

To avoid default, which would trigger a transfer of duties to the Special Servicer, Pirani testified that as early as January 2008, he began attempting to obtain refinancing that would allow

him to make the balloon payment. Pirani stated balloon payments are "quite standard" with regard to the financing of hotels, and Pirani claimed it was generally "not difficult to refinance to pay off [a balloon note] or even get higher refinancing." Pirani claimed he was confident he could obtain refinancing based on his past experience, and contacted Jones Lang LaSalle, a large, nationwide broker that handles refinancing on a large scale. Brokers like Jones Lang LaSalle attempt to find lenders for their clients, charging a fee for this service. As a result of Jones Lang LaSalle's efforts, several lenders responded. In fact, according to Pirani, during the second week of August 2008, Bank of Texas sent a letter of commitment to refinance the loan, but required the final payoff amount due on the balloon payment before it would fully commit. Pirani claimed that Bank of Texas contacted Capmark but was unable to obtain the final payoff balance. Pirani testified "it went downhill" with Bank of Texas after that, and his calls went unreturned. Pirani also testified, however, that he continued talking to other potential lenders, including WorldBanc.

Pursuant to the terms of the Note, the balloon payment came due on September 1, 2008. Admittedly, La Villita was unable to pay the balloon payment. Pursuant to the terms of the Servicing Agreement, the Note was turned over to the Special Servicer, Lennar. According to Pirani, although he was unable to pay the entire balloon payment, he continued to make monthly "interest-only" payments of $37,000.00 to the Master Servicer, Capmark, through January of 2009. Pirani testified he spoke to Jason Nick, the Lennar representative, who told Pirani: (1) La Villita was not required to make payments until a forbearance agreement was in place, (2) even though La Villita was unable to make the balloon payment, Lennar did not consider La Villita in default and foreclosure was not being considered, and (3) Nick was attempting to obtain a year-long extension for La Villita. Pirani admitted, however, that Nick told Pirani the representations Nick made were irrelevant unless and

until a formal agreement was signed. Pirani subsequently received a letter from Lennar confirming that oral representations were not effective; rather, a written agreement was required.

Pirani continued his attempts to obtain refinancing to pay off the Note, specifically with WorldBanc. By the end of October, a month after the balloon payment due date, La Villita and WorldBanc were preparing loan documents. However, Pirani claimed that just like Bank of Texas, WorldBanc was unable to obtain the final payoff balance due on the Note. Pirani testified that by the end of October 2008, ORIX had seemingly replaced Lennar as the Special Servicer of the Note, and it was ORIX who failed to provide WorldBanc with the amount of the final payoff. ORIX sent La Villita a letter that stated special servicing for the Note had been transferred to ORIX effective November 5, 2008, and advising that La Villita's main contact would be Brittany Maher. Pirani and Maher spoke for the first time in early November. Pirani testified he had telephone conversations with Maher over the course of several weeks. According to Pirani, Maher initially did not mention foreclosure, and said she would "try her hardest" to come up with a forbearance agreement. Maher also told Pirani the same thing Nick had, i.e., any oral statements were not binding, and only a written agreement could change the original terms of the Note. And, just as with Lennar, after a conversation with Maher, Pirani received a letter from ORIX stating oral representations were ineffective.

Having failed to obtain financing from Bank of Texas, WorldBanc, and other lenders[2], which according to Pirani was due to the servicers refusals to provide the amount due on the balloon payment, Pirani approached what he described as a "lender of last resort," Dr. Tibor Ritter. Pirani

---

[2] Pirani testified he received a non-binding proposal from Firstmark in July 2008. Again, according to Pirani, when Firstmark was unable to obtain the amount due for a payoff, the deal fell through.

said a lender like Dr. Ritter is a last resort because loans from individuals on distressed properties usually have a "very, very high interest rate," about fourteen percent as opposed to six or seven percent from a conventional lender. According to Pirani and the attorney for Dr. Ritter's real estate company, Michael Baucum, the parties had a verbal agreement to loan La Villita the money necessary to pay the balloon payment. However, according to Baucum, there were problems with pinning down the amount of the final payoff. Apparently, ORIX provided only a preliminary payoff statement as opposed to a final payoff statement, which according to Baucum was at odds with the payoff number provided by La Villita. Moreover, La Villita's commercial real estate servicing specialist, Ann Hambly, testified that neither a lender nor a borrower can rely on a preliminary payoff statement because it contains disclaimers. She also testified it was unreasonable for ORIX to fail to provide a final payoff statement when requested by La Villita.

La Villita presented evidence that it continued, through Pirani, to attempt to obtain relief from ORIX. La Villita wanted to negotiate an extension to pay off the loan, and in an e-mail dated January 14, 2009, also assured ORIX that it would continue its "refinancing efforts with the same degree of urgency and determination." According to La Villita, it made several attempts to pay off the Note in its entirety, but ORIX refused to accept payment. ORIX counters that the amount offered was less than the amount owed.

La Villita also claimed its requests for information, i.e., proof of ORIX's authority to service the note and the final payoff amount, were continually ignored. In support of this claim, La Villita introduced an e-mail from April 13, 2009, in which it asked ORIX for the final payoff. Maher, on behalf of ORIX, responded and provided a preliminary payoff statement, stating she could not provide a final statement until Capmark provided it to her, but assuring Pirani that ORIX was

working "as fast as possible" and would send the final payoff statement as soon as she had it. The day after Maher's responsive e-mail, ORIX sent a foreclosure notice to La Villita.

With regard to the foreclosure, in addition to the failure to pay the balloon payment, ORIX claimed it discovered La Villita had committed other defaults under the Note. According to ORIX, Pirani revealed La Villita owed him $3.1 million, $500,000.00 in promissory notes and $2.6 million in management fees. According to ORIX, the Loan Documents precluded La Villita from incurring any indebtedness, other than reasonable trade and operational debt. By incurring a debt to Pirani, and entering a contract regarding same, La Villita had violated the loan agreement.

After months of discussions with La Villita following the failure to pay the balloon payment, and based on La Villita's defaults under the Note and Loan Documents, ORIX determined that it was required, under the terms of the Servicing Agreement, to send La Villita a notice of foreclosure, which it did. To stop the foreclosure, La Villita filed the instant suit on May 9, 2009. Claiming that it was unsure of who was entitled to enforce the Note (allegedly because ORIX refused to provide documentation from the owner showing ORIX was entitled to enforce it), La Villita's suit named everyone ORIX claimed to represent, including various trusts and servicers named by ORIX in the foreclosure notice as having some kind of interest in the Note and other Loan Documents. La Villita asserted claims for negligent misrepresentation, breach of contract, and fraud, and also sought an accounting. La Villita further sought a temporary restraining order and injunctive relief to stop the foreclosure. The trial court granted the restraining order and then, after an evidentiary hearing, the trial court granted the temporary injunction. In response to La Villita's lawsuit, ORIX counterclaimed for breach of contract, seeking to enforce the Note and the other relevant Loan Documents. La Villita filed an amended petition and answer to the counterclaim. In the amended

petition, La Villita also asserted a declaratory judgment action, asking the trial court to declare, among other things: (1) ORIX was not a holder in due course, (2) ORIX had not complied with the Servicing Agreement, (3) ORIX improperly calculated default interest, (4) ORIX improperly calculated a late payment fee, and (5) ORIX was not entitled to be reimbursed for certain costs or to recover attorney's fees.

The parties proceeded to trial before the court. After the presentation of evidence and closing arguments, the trial court announced its rulings on the record. The court stated:

> I think first and foremost, I find that Mr. Pirani is a good and honorable man and lives up to his word. And I certainly think ORIX, no offense to the two fine lawyers who are in the courtroom, but ORIX doesn't play fair and they haven't been playing fair with this note or this family. I think the plaintiffs have clean hands in this situation. And, therefore, I am going to declare that the amount owed is $6,052,066.52 [the amount claimed to be owed by La Villita]. I think the late fees and default fees are unfair and, in fact, are – the actions that were taken even before the note matured show that those are not appropriate and I'm going to strike those fees.
>
> Mr. Pirani will have – and the plaintiff entities will have 18 months to refinance. They will continue to pay principal and interest on the note and escrow for taxes and insurance and the taxes and insurance will be applied fairly and appropriately as they come due.
>
> I'm going to order that the defendants indemnify Mr. – the plaintiffs upon payment of the note.
> And I'm also awarding the plaintiffs their attorneys' fees as proved up.

The trial court subsequently entered a written judgment, reflecting and clarifying its oral rulings. In summary, the judgment provided:

> •ORIX failed to prove it was entitled to enforce the Note, and ORIX should take nothing on its breach of contract claim
>
> •ORIX is permanently enjoined from foreclosing on the Hotel

•all other defendants are enjoined from foreclosing on the Hotel for eighteen months from the date of the judgment, giving La Villita eighteen months from the date of the judgment to either pay the amount owed or refinance the Note

•the balance due on the note is $6,052,066.53, and no late or default fees are due

•during the eighteen-month injunctive period, La Villita must continue to make monthly payments in the amount of the original payments, $56,874.97, and monthly escrow tax/insurance payments in the amount of $27,431.00

•ORIX is required to pay trial attorney's fees in the amount of $110,431.00, as well as contingent appellate attorney's fees in the event La Villita prevails in any appeal to the court of appeals and supreme court.

The trial court entered findings of fact and conclusions of law that essentially mirror its written judgment, except that in its findings of fact, the trial court found ORIX "intentionally interfered with [La Villita's] ability to avoid foreclosure and pay off the note," and "intentionally interfered with [La Villita's] efforts to refinance and therefore pay off the note," and "ORIX failed to comply with the terms of the note." ORIX subsequently perfected this appeal.

## ANALYSIS

ORIX raises six issues on appeal: (1) the trial court erred in rendering a take nothing judgment in favor of La Villita on ORIX's breach of contract claim on the note because ORIX established that as Special Servicer it was entitled to enforce the Note and other Loan Documents on behalf of the Note owner, the Trust; (2) the trial court erred in finding the balance due on the Note was $6,052,066.52 and that no additional sums were due for late fees, default interest, and collection costs; (3) the trial court erred in reforming the terms of the Loan Documents, giving La Villita an additional eighteen months to repay or refinance the Note, and preventing ORIX from exercising its right to foreclosure; (4) the trial court erred in denying attorney's fees to ORIX, and in awarding attorney's fees to La Villita; (5) La Villita did not present legally or factually sufficient evidence to

support its causes of action for negligent misrepresentation, fraud, breach of contract, breach of the duty of good faith, or accounting, and La Villita neither pled nor proved a claim for tortious interference; and (6) La Villita did not present legally or factually sufficient evidence to support its affirmative defenses of contributory negligence, estoppel and laches, failure to perform conditions precedent, defect in parties, failure to mitigate, failure of consideration, impossibility of performance, and ORIX's lack of capacity to recover.

ORIX argues that by its actions the trial court altered ORIX's commercial rights and La Villita's commercial obligations. ORIX contends the judgment negated freedom to contract, and if this court affirms, we would be condoning the use of contract reformation, in the absence of pleading to support same, to excuse contract performance. ORIX suggests this is dangerous because it would permit trial courts to "undermine contractual relations, to ignore the business practices of the parties . . . and to create legal indeterminacy." La Villita counters that contrary to ORIX's dire predictions, the judgment will not "tear at the very fabric" of the industry. Rather, the trial court did nothing more than require ORIX to prove it was entitled to enforce the Note. According to La Villita, ORIX's failure to prove it was entitled to enforce the Note mandated the trial court's judgment.

***Issue One: Did ORIX prove it was entitled to enforce the Note as Special Servicer so as to support its breach of contract claim?***

In this issue, ORIX argues it conclusively established its right as Special Servicer to enforce the Note on behalf of the Trust. To enforce the Note, i.e., to establish its breach of contract claim, ORIX had to prove: (1) the existence of the Note, (2) La Villita signed the Note, (3) ORIX had authority to enforce the Note, and (4) the balance due and owing under the Note. *See Leavings v. Mills*, 175 S.W.3d 301, 309 (Tex. App.—Houston [1st Dist.] 2004, no pet.); *First Gibralter Bank,*

*FSB v. Farley*, 895 S.W.2d 425, 427 (Tex. App.—San Antonio 1995, writ denied). ORIX challenges the legal sufficiency of the evidence to support the trial court's finding that ORIX did not prove its entitlement to enforce the Note, which resulted in the failure of its breach of contract claim. La Villita disagrees, contending the evidence was conflicting as to whether ORIX was the Special Servicer. La Villita further asserts that even if ORIX proved it was the Special Servicer for the Note, this would not legally prove ORIX was entitled to enforce the Note because there is no authority for the proposition that a special servicer is automatically entitled to enforce a note.

Because ORIX sued to enforce the note pursuant to its breach of contract claim, it had the burden to establish its authority to enforce the Note, along with the other elements stated above. When an appellant attacks the legal sufficiency of an adverse finding on an issue for which it had the burden of proof, it must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001); *Silver Oil & Gas, Inc. v. EOG Resources, Inc.*, 246 S.W.3d 197, 203 (Tex. App.—San Antonio 2007, no pet.). In reviewing a "matter of law" challenge, the reviewing court must first examine the record for evidence that supports the finding, while ignoring all evidence to the contrary. *Silver Oil & Gas*, 246 S.W.3d at 203. If there is no evidence to support the finding, only then will the reviewing court examine the entire record to determine if the contrary proposition is established as a matter of law. *Id.*

As required by the standard of review, we must first look at the evidence that supports the trial court's finding that ORIX was not entitled to enforce the Note. La Villita introduced documents into evidence that named Lennar as the Special Servicer. The first document, The Bloomberg Report, an industry publication, stated that as of June 2009, Lennar was the Special Servicer on the

Note.  Similarly, the Servicing Agreement specifically names Lennar as the Special Servicer for the Note.  La Villita also argues there were no transfers of the Note to ORIX from the note owner or holder, only an allonge transferring the Note from AMRESCO Capital, L.P. to AMRESCO Capital Limited, Inc.  Accordingly, La Villita asserts there is no evidence of any right by ORIX to enforce the Note.  We disagree.  Although La Villita's proffered evidence establishes Lennar was, at one time, the Special Servicer, the evidence does not exclude ORIX as the Special Servicer or as the entity entitled to enforce the Note.  Accordingly, we must review all of the evidence to determine whether it establishes ORIX was entitled to enforce the Note.

First, ORIX does not purport to be the owner or holder of the Note.  Instead, ORIX contends that it is the Special Servicer for the Note with the right to enforce it pursuant to its duties set out in the Servicing Agreement.  Considering all of the evidence in the record, including that relied upon by ORIX, for the reasons set forth below, we hold ORIX conclusively established it had the right to enforce the Note as Special Servicer.  *See City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005) (holding that evidence is conclusive only if reasonable people could not differ in their conclusions).

In support of its claim that it established its right to enforce the Note, ORIX first points to the testimony of John Dinan, director of ORIX Capital Markets, LLC, who described how ORIX became the Special Servicer of the Note.  Dinan testified section 3.23(d) of the Servicing Agreement contains a provision allowing the controlling class of certificate holders to appoint or remove a special servicer.  Dinan explained that after ORIX acquired a class of certificates, it substituted itself as the Special Servicer, as permitted under the Servicing Agreement.  Dinan stated this was standard in the industry when investors, such as ORIX, can provide their own servicing platform.  He went on to explain when a new Special Servicer is substituted in, the new substitution is valid as long as

the rating agencies sign off on it. Here, according to Dinan, the rating agencies found ORIX qualified to act as a Special Servicer, and provided confirmation by way of a rating confirmation letter, which established the transfer of special servicing from Lennar to ORIX. Dinan identified this letter during his testimony, and stated the letter ". . . is the document that's required by the [Servicing Agreement] incident to the transfer of special servicing." The letter is dated October 14, 2008, subsequent to the execution of the Servicing Agreement in January of 1999, and complies with the requirements of the Servicing Agreement.

In addition to Dinan's testimony, the Servicing Agreement, specifically paragraph (d) of section 3.23, was admitted into evidence, and provides:

> No termination of the Special Servicer and appointment of a successor Special Servicer shall be effective until the successor Special Servicer has assumed all of its responsibilities, duties and liabilities hereunder pursuant to a writing satisfactory to the Trustee and each Rating Agency, as evidenced in writing and the Trustee has received written confirmation from each Rating Agency that such appointment would not cause any Rating Agency to qualify, withdraw or downgrade any of its then current ratings on any Certificates.

Thus, according to the Servicing Agreement, ORIX became the successor to Lennar upon written approval by the trustee and each rating agency. The rating confirmation letter identified by Dinan satisfied this requirement.

Dinan then described the process of notifying the borrower regarding a change in special servicers. Typically, the existing Special Servicer will notify the borrower of the transfer, and then the new Special Servicer will confirm that with the borrower. In this case, ORIX introduced a letter from ORIX dated November 24, 2008, signed by Maher, to La Villita in which ORIX advised La Villita that effective November 5, 2008, ORIX was replacing Lennar as Special Servicer on the Note.

The letter referenced another letter from Lennar to La Villita; however, that letter was not admitted into evidence based on an objection by La Villita.

In addition to Dinan's testimony as to how ORIX allegedly became the Special Servicer of the Note, Maher testified about the notice letter from ORIX to La Villita, stating ORIX was the Special Servicer of the Note beginning in November of 2008. Maher also testified La Villita communicated with ORIX in its capacity as the Special Servicer for six months, which ORIX claims establishes La Villita's acknowledgment of ORIX as Special Servicer.

The record also contains testimony from Baucum that when he was discussing potential loan terms with La Villita, he understood the Note was serviced by ORIX. Hambly, a witness called by La Villita, also admitted she was approached by La Villita to deal with ORIX with regard to a loan extension request, and she assumed ORIX was the Special Servicer of the Note.

When ORIX cross-examined Pirani, he claimed he did not know who the Special Servicer was, but admitted that at the temporary injunction hearing, he testified he never disputed ORIX's status as Special Servicer. Additionally, during testimony on attorney's fees, La Villita's counsel admitted he went to ORIX's office to inspect the Note.

Based on the evidence in the record, ORIX argues it conclusively established its right to enforce the Note as Special Servicer, and therefore the trial court erred in finding it failed to prove it was entitled to enforce the Note. *See* TEX. BUS. & COMM. CODE ANN. § 3.301 (Vernon 2002) (stating person entitled to enforce instrument includes "nonholder in possession of the instrument who has the rights of a holder."); *see also Leavings v. Mills*, 175 S.W.3d 301, 309 (Tex. App.—Houston [1st Dist.] 2004, no pet. (stating that holder of instrument is entitled to enforce

same). We agree with ORIX. Based on the documentation and testimony in the record, ORIX conclusively established its right to enforce the Note as Special Servicer.

La Villita next argues that even if ORIX was the Special Servicer, this does not automatically vest ORIX with the right to enforce the Note because there is no authority stating a Special Servicer automatically has the right to enforce a note. We hold La Villita's argument is dispelled by reference to the Servicing Agreement, which provides, through various sections, that a Special Servicer has authority to "service and administer the [Note] on behalf of the Trust Fund and the Trustee . . . in accordance with the Servicing Standard," which provides that in the event of a default, and "in the good faith and reasonable judgment of the Special Servicer, no satisfactory arrangements can be made for the collection of delinquent payments," the Special Servicer must maximize the recovery on the Note for the benefit of the certificateholders. This authority includes the right of foreclosure and enforcement of the Loan Documents.

Because ORIX conclusively established its right to enforce the Note, contrary to the trial court's finding, we sustain ORIX's first issue and hold the evidence conclusively established ORIX's right to enforce the Note.

***Issue Two: Did ORIX conclusively establish the amount due on the Note, including that additional sums were due for late fees, default interest, and collection costs? Or, stated another way, did La Villita present any reliable evidence that the amount due on the Note was $6,052,066.52?***

In this issue, ORIX argues it conclusively established the principal amount due on the Note was $6,228,475.50, and established additional amounts were due for (1) interest from June 1, 2009 to July 13, 2009–$48,580.38, (2) default interest from April 16, 2008 (the date Pirani began loaning money to La Villita) to July 13, 2009–$413,684.21, (3) late fees–$333,040.01, (4) miscellaneous default expenses–$19,211.10, and (5) lien release and recording fees–$1,050.00. According to

ORIX, it presented evidence establishing a total amount due of $7,044,041.20, in addition to attorney's fees. ORIX argues the additional amounts added to the principal balance were charged and due based on the terms of the Note. It also contests the trial court's decision to disregard the late fees and default interest provided for by the Note.

Accordingly, ORIX asserts it established as a matter of law the amount due on the Note, and the trial court's finding that the balance due on the Note is $6,052.066.52, the amount claimed by La Villita, is erroneous. ORIX argues La Villita's evidence of the amount due on the Note should not be considered by the court because it is unreliable. *See City of Keller*, 168 S.W.3d at 812-13 (holding that unreliable or incomplete evidence is legally insufficient evidence). La Villita counters that the evidence was conflicting as to the amount due on the Note, and accordingly the trial court was permitted to determine which evidence was credible. *See id.* at 819. The same standard of review applicable to issue one is applicable to our review of this issue. *See Dow Chem. Co.*, 46 S.W.3d at 241; *Silver Oil & Gas, Inc.*, 246 S.W.3d at 203. We agree with ORIX.

To prove the amount due on the Note, principal balance as well as a total balance based on additional fees, ORIX presented testimony from Maher. Maher testified she obtained an amortization schedule related to the Note from Capmark's website. The amortization schedule, which was admitted into evidence without objection, provided Maher with the principal balance, which was $8.4 million. It also provided the interest rate, the term of the Note, and the monthly payments due under the Note. The amortization schedule used by Maher identified each principal and interest payment made during the amortization term.

Maher also obtained a transaction history report from Capmark, which was also admitted into evidence. This report accounted for payments up to July 13, 2009, according to Maher. Although

no payments are listed for 1998, Maher testified the unpaid principal balance clearly gave credit for 1998 payments.

Both the amortization schedule and the transaction history report confirm a principal balance of $6,660,800.26 was due after the August 1, 2008 payment, which was the last payment before La Villita defaulted by failing to pay the balloon payment. According to the transaction history report, after deducting payments made by La Villita after the default, the principal balance due was $6,228,475.50. In calculating the total amount due, Maher testified she calculated and added in the interest, the default interest, late fees, and other items La Villita was obligated to pay under the terms of the Note to reach the total balance. More specifically, Maher testified she added (1) $48,580.38 in contract interest, (2) $413,684.21 in default interest–at a rate of 5 percent as specified in the Note calculated from April 16, 2008, through the estimated payoff date of July 13, 2009, (3) $333,040.01 in late fees–five percent of the unpaid principal balance as of the maturity date, and (4) $19,211.10 in post-default expenses incurred by ORIX on behalf of the Trust. Added to this, according to ORIX, was $1,050.00 for lien release and recording fees. According to ORIX, when the amounts described by Maher, as well as the fees for lien release and recording, are added to the principal balance as established by the transaction history report, the total balance due under the terms of the Note is $7,044,041.20, plus attorney's fees.

La Villita argues the trial court was not required to accept at face value the evidence provided by ORIX because neither Maher nor the documents she relied on are convincing. According to La Villita, Maher admitted she had no real first hand knowledge of the amounts due or paid, but instead relied upon information provided by Capmark and Lennar. She also admitted ORIX did not maintain its own calculations based on the Note and payments; rather, this information was maintained by

Capmark, which was responsible for keeping the books. Accordingly, the trial court could have found Maher's calculations lacked credibility and ignored them in favor of the calculations provided by La Villita. La Villita argues ORIX's figures are not "magical," and cannot establish the amount due as a matter of law in light of the controverting evidence provided by La Villita through Pirani. *See Oyster Creek Fin. Corp. v. Richwood Invs. II, Inc.*, 176 S.W.3d 307, 326 (Tex. App.—Houston [1st Dist.] 2004, pets. denied) (holding lender did not establish amount of interest due on note as matter of law because there was conflicting evidence about amount due).

To establish there was conflicting evidence regarding the amount due on the Note, La Villita points to testimony provided by Pirani. Pirani testified that to determine the amount due on the Note, he began by printing an amortization schedule from the Internet. Based on what he knew, i.e., the amount of the original note, the interest rate, and the amount of the monthly payments, he calculated the principal balance due by inputting the information into the amortization schedule, which would show how each payment is applied–the amount applied to principal and interest–and the amount of principal after each payment. Pirani testified his calculations were based on what the total balance would be as of July 1, 2009, which was the point of trial and based on the last payment made by La Villita. Based on the amortization schedule, the balance due after the July 1, 2009 payment was $6,319,729.95. Pirani said he then "went through Capmark's numbers that ORIX had provided us for late fees and . . . found three: [t]wo prior to the maturity date on September 1st and one right after." Giving ORIX the benefit of the doubt, he added these late fees to the balance. The late fees totaled $8,531.25 ($2,843.75 each). After adding in the late fees, he testified there was a balance due of approximately $6,328,261.00. He then calculated the amount remaining in escrow–money deducted to pay taxes, insurance and renovation reserve–and subtracted those from the balance,

leaving $6,102,066.52. Because Pirani was required to pay money into the registry of the court in the amount of $50,000.00, he also deducted that amount, leaving a balance of $6,052,066.52. Pirani testified this was the total amount due on the Note after the July 1, 2009 payment, and this is the balance found by the trial court.

ORIX claims Pirani's testimony is unreliable because: (1) it was not based on the actual payments made over the life of the Note, (2) did not account for unpaid interest that had accrued in July 2009, and (3) was contradicted by the actual amortization schedule for the Note. Importantly, according to ORIX, Pirani did not include all of the late fees, default interest, or other post-default charges, even though on cross-examination he acknowledged La Villita's agreement to pay such amounts under the terms of the Note. Pirani specifically agreed ORIX could assess a late fee if the Note was not paid on time, as well as costs of collection and attorney's fees. He also admitted La Villita agreed that in the event of default, a higher interest rate could be assessed. ORIX argues the testimony was unreliable because the entire calculation was based on a random amortization schedule, and not the actual schedule for the loan. ORIX concludes that it conclusively established the amount due under the Note because Pirani's evidence was unreliable and must be disregarded.

We agree with ORIX regarding the unreliability of Pirani's testimony, although we recognize he did include one post-default late fee, and two pre-default late fees. Pirani's figures were not based on actual note payments, he did not account for portions of the unpaid interest, and he did not include default interest or most of the other post-default charges.[3]

ORIX contends the trial court's finding that La Villita did not owe any late fees (especially in light of the fact that Pirani admitted to three late fees) or default interest was erroneous because

---

[3] Pirani testified he included one post-default late fee.

ORIX proved those fees as a matter of law, and Pirani admitted La Villita agreed to late fees and default interest if the Note were not paid on time. As to the default interest, La Villita argues ORIX did not prove entitlement to default interest from April 16, 2008, because La Villita defaulted on September 1, 2008, by failing to pay the balloon payment. However, the evidence established default interest was calculated from April 16, 2008, because La Villita borrowed money from Pirani individually in contravention of the Loan Documents, which precluded La Villita from incurring additional debt. We agree with ORIX that according to the terms of the Loan Documents, this was a default, entitling ORIX to default interest from the date of the loan. We note La Villita does not contest that the loan from Pirani was, in fact, a default under the Loan Documents.

Based on the foregoing, we hold ORIX conclusively established the amount due on the Note was $7,044,041.20, as opposed to the $6,052,066.52 balance found by the trial court. Accordingly, we sustain ORIX's second issue.

***Issue Three: Did the trial court err in granting a permanent injunction precluding any defendant from foreclosing on the Hotel for eighteen months, thereby giving La Villita an additional eighteen months to pay off the Note or obtain refinancing?***

In its judgment, the trial court granted a permanent injunction, which enjoined ORIX and the other appellants from foreclosing on the Hotel. The injunction precluded ORIX from ever seeking foreclosure on the Hotel, presumably based on the trial court's finding ORIX had no authority to enforce the Note. The other appellants were precluded from seeking foreclosure on the Hotel for a period of eighteen months, giving La Villita that time period to pay off the Note or obtain refinancing to pay off the Note. Although the trial court found (1) ORIX intentionally interfered with La Villita's ability "to avoid foreclosure and pay the note," and with La Villita's "efforts to

refinance and therefore pay off the note," and (2) all appellants "failed to comply with the terms of the Note," we hold these findings do not support the injunctive relief awarded by the trial court.

We review the granting or denial of a permanent injunction for an abuse of discretion. *Operation Rescue-Nat'l v. Planned Parenthood*, 975 S.W.2d 546, 560 (Tex. 1998). Generally, a trial court abuses its discretion and is subject to reversal when it acts without reference to guiding rules or principles of law or misapplies the law to the established facts. *Letkeman v. Reyes*, 299 S.W.3d 482, 486 (Tex. App.—Amarillo 2009, no pet.). However, an abuse of discretion may occur when the trial court's decision lacks evidentiary support. *Id.*

To obtain a permanent injunction, La Villita had to prove (1) the existence of a wrongful act, (2) that gives rise to imminent and irreparable harm, (3) for which there is no adequate remedy at law. *Id.* (citing *Jim Rutherford Invs., Inc. v. Terramar Beach Cmty. Ass'n*, 25 S.W.3d 845, 849 (Tex. App.—Houston [14th Dist.] 2000, pet. denied)). We hold La Villita did not plead one of the wrongful acts found by the trial court, intentional interference, and we further hold La Villita failed to prove the other wrongful act found by the trial court, failure to comply with the terms of the Note.

First, the trial court found ORIX intentionally interfered with La Villita's abilities to avoid foreclosure by paying off the Note or refinancing. However, there was no such finding of interference as to the other appellants. Therefore, these appellants cannot possibly be precluded from seeking foreclosing on the basis of an alleged interference they were never found to have committed. Second, La Villita never pled any form of tortious interference, either with contract or prospective business relations, so as to support a finding of interference by ORIX or the other appellants. *See Stoner v. Thompson*, 578 S.W.2d 679, 682-83 (Tex. 1979) (holding that judgment must be based upon pleadings in absence of trial by consent); *Bilderback v. Priestley*, 709 S.W.2d 736, 743 (Tex.

App.—San Antonio 1986, writ ref'd n.r.e.) (holding that where there were no pleadings to support prejudgment interest, no request for trial amendment on prejudgment interest, and no trial by consent on the issue of prejudgment interest, party was not entitled to prejudgment interest). Accordingly, the trial court's "interference" finding cannot possibly form the legal basis for the eighteen-month injunction.

The trial court also found appellants "failed to comply with the terms of the Note." However, the trial court does not specifically find what terms were not complied with or which appellant failed to comply with what. La Villita pled a cause of action for breach of contract, alleging appellants "breached the contract by refusing to provide evidence of their authority to act and their refusal to provide a final payoff amount," and breached the contract by seeking interest and penalties over and above that provided for in the Note. However, we have reviewed the Note and find nothing therein that requires ORIX or any other appellant to provide evidence of their authority to act or to provide a final payoff amount. And, we found nothing in the record to suggest the fees and interest sought by ORIX based upon La Villita's default were in excess of those provided for in the Note. In fact, Pirani admitted that he agreed, on behalf of La Villita, to the terms of the Note regarding default interest and late fees. Moreover, if ORIX did breach certain Note terms, we hold damages for any such breach would be an adequate remedy at law so as to preclude an award of injunctive relief. *See Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002) (holding that courts generally will not enforce contractual rights by injunction because party can rarely establish irreparable injury and inadequate legal remedy when damages for breach of contract are available); *Victory Drilling, LLC v. Kaler Energy Corp.*, No. 04-07-00094-CV, 2007 WL 1828015, at *2 (Tex. App.—San Antonio Jun. 27, 2007, no pet.) (mem. op.) (holding injunctive relief is generally improper where harm may

be adequately cured by monetary damages). La Villita did not present any evidence to establish that money damages for an alleged breach would be inadequate.

ORIX argues that by granting the eighteen-month injunction, the trial court rewrote an unambiguous contract. We agree. The Note states with clarity that the balance of the Note was due on September 1, 2008:

> [T]he balance of the said principal sum, together with accrued and unpaid interest and any other amounts due under this Note shall be due and payable on the first day of September, 2008 or upon earlier maturity hereof whether by acceleration or otherwise.

The Note further provided that if it was not paid within ten days from the due date, the Note holder was entitled to institute foreclosure proceedings. By giving La Villita an additional eighteen months to pay off the Note, the trial court in essence reformed the Note.

Contract reformation is an equitable remedy available under very limited circumstances, none of which were pled or proven in this case. As the supreme court explained in *Cherokee Water Co. v. Forderhause*:

> The underlying objective of reformation is to correct a mutual mistake made in preparing a written instrument, so that the instrument truly reflects the original agreement of the parties. [citation omitted]   By implication, then, reformation requires two elements: (1) an original agreement, and (2) a mutual mistake, made after the original agreement, in reducing the original agreement to writing. [citations omitted] A court is without power to make a contract that the parties did not make; an actual agreement reached prior to the drafting of the instrument involved is a requisite to an action for reformation. [citation omitted]

741 S.W.2d 377, 379 (Tex. 1987). There is only one exception to this rule, and that is when there has been a mistake by one party, accompanied by fraud or other inequitable conduct by the other party. *Liu v. Yang*, 69 S.W.3d 225, 228 (Tex. App.—Corpus Christi 2001, no pet.). In that case, the contract may be made to conform to the agreement actually entered into, according to the intention

of the parties. *Id.* Although La Villita pled fraud, the trial court made no fraud findings that would support a reformation. Moreover, La Villita's fraud pleadings related to alleged conduct by ORIX that was committed *after* La Villita defaulted on the Note. Accordingly, the alleged fraud could not have resulted in a mistake, unilateral or mutual, in the Note. Additionally, La Villita did not plead mutual mistake or unilateral mistake, which is required before a party is entitled to reformation. *See id.* at 229. And finally, La Villita never sought the remedy of reformation in its live pleading. *See Stoner*, 578 S.W.2d at 682-83; *Bilderback*, 709 S.W.2d at 743.

La Villita's first argument in response to ORIX's arguments is that a trial court is permitted to issue a permanent injunction that is limited in time. *See Pena v. Garza*, 61 S.W.3d 529, 531 (Tex. App.—San Antonio 2001, no pet.) (holding the order that ended after two years was permanent injunction). La Villita is correct, a trial court may enter a "permanent" injunction that is limited in time. *See id.*; *see also Qwest Commc'ns Corp. v. AT&T Corp.*, 24 S.W.3d 334, 337 (Tex. 2000) (holding that whether injunction is effective for fixed period of time or is made effective only until further court order or final judgment is one factor in determining whether injunction is temporary or permanent). However, a trial court's ability to enter such an injunction does not address whether it was right to do so in this case. La Villita then refers to the trial court's findings on interference and breach of the Note terms as support for the injunction. As noted above, there is no trial court finding that any appellant, other than ORIX, interfered with a payoff or refinancing. Thus, the interference findings will not support the eighteen-month injunction. As to the breach found by the trial court, the only "breach" referred to by La Villita in its brief is ORIX's alleged failure to comply with certain provisions of the Servicing Agreement. However, the trial court did not find ORIX or any other appellant breached the Servicing Agreement. And, even if it had, this would be in error

because La Villita was not a party to the Servicing Agreement, nor can it be legally contended that it was a third-party beneficiary to that agreement. *See S. Tex. Water Auth. v. Lomas*, 223 S.W.3d 304, 306-07 (Tex. 2007) (discussing requirements for establishing third-party beneficiary status). Thus, we hold the breach suggested by La Villita cannot support the eighteen-month injunction.

Because the evidence did not establish the existence of a wrongful act or support the trial court's reformation of the terms of the Note, we hold the trial court erred in granting the eighteen-month injunction, and sustain ORIX's third issue.

***Issue Four: Did the trial court err in denying recovery of attorneys' fees to the Trust, and in awarding attorney's fees to La Villita?***

*ORIX's Attorney's Fees*: *Section 38.001 of the Texas Civil Practice and Remedies Code*

ORIX first contends the trial court erred by denying its request for attorney's fees on behalf of the Trust. ORIX argues that because as representative of the Trust it is entitled to judgment on the Note, i.e., to recover on its breach of contract claim, it is consequently entitled to recover attorney's fees under section 38.001 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001 (Vernon 2008). Section 38.001(8) provides that a prevailing party who recovers damages on a claim for breach of an oral or written contract may recover reasonable attorney's fees. *Id*. § 38.001(8). Attorney's fees must be awarded to the prevailing party under section 38.001 if there is proof of the reasonableness of the fees. *Cordova v. Sw. Bell Yellow Pages, Inc.*, 148 S.W.3d 441, 446 (Tex. App.—El Paso 2004, no pet.) (citing *World Help v. Leisure Lifestyles, Inc.*, 977 S.W.2d 662, 683 (Tex. App.—Fort Worth 1998, pet. denied)). A trial court has discretion in fixing the amount of the fees, but does not have discretion to completely deny fees if they are proper under section 38.001. *World Help*, 977 S.W.2d at 683.

Because we have determined ORIX conclusively established its right to enforce the Note (issue one), and conclusively established the amount due on the Note (issue two), we therefore hold ORIX has sustained the burden with regard to its breach of contract claim, i.e., recovery on the Note. *See Leavings*, 175 S.W.3d at 309; *First Gibralter Bank*, 895 S.W.2d at 427. There is no dispute that the Note exists, or that La Villita signed the Note. La Villita contends, however, ORIX should not recover any fees because (1) it was not the prevailing party, and (2) the Trust "never asked to recover any fees," only ORIX did.

In its counterclaim for breach of contract, ORIX stated it was seeking to recover for breach of contract "as Special Servicer of . . . the Trust." It properly describes the Trust as the owner and holder of the note, and states it is authorized to bring suit on behalf of the Trust. As to attorney's fees, ORIX's counterclaim states that in acting to protect the rights of the Trust under the Note, it was required to hire attorneys. It then seeks to recover fees incurred in prosecuting the counterclaim, i.e., the breach of contract claim.

Clearly, under the terms of the Servicing Agreement, ORIX is entitled to take judicial action on behalf of the Trust for its benefit and protection. By pleading that it was bringing suit and seeking recovery as Special Servicer on behalf of the Trust, ORIX properly pled for recovery and fees. Accordingly, we find La Villita's argument without merit.

Because ORIX established its right to enforce the Note, the amount due on the Note, prevailed, and properly pled for attorney's fees, all that remained for ORIX to establish in order to recover attorney's fees was that the fees were reasonable. *See Cordova*, 148 S.W.3d at 446 (citing *World Help*, 977 S.W.2d at 683). ORIX and La Villita each presented an expert who testified

regarding the reasonableness of ORIX's attorney's fees. ORIX's attorney testified the fees were reasonable and necessary; however, La Villita's attorney testified the fees were unreasonable.

Because the record contains conflicting evidence on the reasonableness of the fees, and the trial court did not make any finding on this issue, this court is precluded from making factual findings; therefore, we must remand the issue to the trial court for a determination of the amount of attorney's fees, if any, ORIX may recover.

*La Villita's Attorney's Fees*: *Sections 37.009, 42.003, and 38.001*
*of the Texas Civil Practice and Remedies Code*

ORIX also contends the trial court erred in awarding $110,431.00 in attorney's fees to La Villita. ORIX argues La Villita's recovery of attorney's fees pursuant to section 37.009 of the Texas Civil Practice and Remedies Code, which is part of the Uniform Declaratory Judgments Act ("the Act"), was improper because La Villita's declaratory judgment claim was merely coupled to ORIX's existing claims to "pave the way to recover attorneys' fees."

We review an award of attorney's fees under the Act for an abuse of discretion. *Barshop v. Medina County Underground Water Conservation Dist.*, 925 S.W.2d 618, 637 (Tex. 1996)*; In re Ray Ellison Grandchildren Trust*, 261 S.W.3d 111, 126 (Tex. App.—San Antonio 2008, pet. denied); *City of Grey Forest v. Vernon*, 254 S.W.3d 548, 554 (Tex. App.—Amarillo 2008, pet. denied). Under the Act, a person interested under a contract may have a court determine any question of construction or validity arising under the instrument and obtain a declaration of rights, status, or other legal relations under it. TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(a) (Vernon 2008). The Act also provides that the court may award costs, including attorney's fees. *Id.* § 37.009.

However, declaratory relief may not be used solely as a vehicle to obtain attorney's fees, and

is inappropriate if it will serve no useful purpose. *City of Grey Forest*, 254 S.W.3d at 554. Therefore, a claim for declaratory relief cannot be added to an existing dispute simply to recover attorney's fees. *Hartford Cas. Ins. v. Budget Rent-A-Car*, 796 S.W.2d 763, 772 (Tex. App.—Dallas 1990, writ denied). In other words, "[a] declaratory relief plea may not be coupled to a damage action simply in order to pave the way to recover attorney's fees." *Id.* In *Hartford*, the court of appeals denied recovery of attorney's fees under the Act where the declaratory relief duplicated the relief already sought under a breach of contract claim in the same litigation. *Id.* at 771-72. According to ORIX, that is the same situation currently before the court, i.e., ORIX sought recovery for a breach of contract claim based on La Villita's default under the Note, and La Villita sought to have the trial court declare, by several specific declarations, ORIX was not entitled to recover on that claim.

La Villita initially filed suit seeking injunctive relief. ORIX answered, and asserted a counterclaim on behalf of the Trust for breach of contract based on La Villita's default under the Note. After ORIX counterclaimed for breach of contract, La Villita filed an amended petition adding several claims for relief, including a declaratory judgment claim. In support of its breach of contract claim and request for attorney's fees, ORIX pled, and was required to prove:

•Pirani signed the Note on behalf of La Villita

•ORIX had the authority, under the Servicing Agreement or otherwise, to enforce the Note

•the amount owed on the Note, including the balance, interest, default interest, late fees, collection costs

•reasonable and necessary attorney's fees

In its declaratory judgment action, La Villita asked the trial court to declare, among other things[4]:

•ORIX was not a holder of the Note, and did not comply with the Servicing Agreement by which it claims authority to act in this matter

•ORIX had improperly claimed and/or calculated default interest and late payment fees under the Note

•ORIX is not entitled to attorney's fees

When we compare the elements ORIX was required to prove to recover on its breach of contract claim and claim for attorney's fees with the declarations sought by La Villita, the declarations serve no useful purpose, and were simply included to "pave the way" for La Villita's recovery of attorney's fees. First, ORIX was required to prove it was entitled to enforce the Note, and La Villita's pleadings essentially asked the court to declare ORIX was not entitled to enforce the Note. Second, ORIX was required to prove the full amount owed under the Note, and La Villita sought a declaration that it did not owe certain fees and interest. Finally, ORIX was required to prove its entitlement to attorney's fees, and La Villita sought a declaration that ORIX was not entitled to those fees.

La Villita counters that this case is not simply where one party asserts a breach of contract and the other party files a declaratory judgment action denying it. Rather, La Villita contends this case involves "disputes as to whether the party bringing the breach of contract claim has the authority to enforce its claim, regardless of the underlying merits." Therefore, La Villita asserts this dispute

---

[4] La Villita also asked the trial court to declare (1) ORIX conducted tests and investigations on the Hotel and is improperly claiming La Villita owes costs for same, and (2) La Villita did not violate the terms of the Environmental Liabilities Agreement. No such declarations are contained in either the judgment or the trial court's findings of fact and conclusions of law.

"transcends ORIX's breach of contract claim." La Villita argues that determining whether ORIX has rights under the Note or Servicing Agreement serves a purpose beyond the resolution of the breach of contract action. We disagree. To even recover on its breach of contract claim, ORIX was required to prove it had the authority to enforce the Note. *See Leavings*, 175 S.W.3d at 309; *First Gibralter Bank*, 895 S.W.2d at 427. Its rights under the documents in this case was clearly an element of its cause of action. Accordingly, La Villita was not entitled to recover attorney's fees based on the Act.

ORIX also argues La Villita was not entitled to recover fees under the fee-shifting provisions of Rule 167 of the Texas Rules of Civil Procedure and section 42.003 of the Texas Civil Practice and Remedies Code. Section 42.003 and Rule 167 provide for shifting of attorney's fees and other costs based on rejected settlement offers. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 42.001-.005 (Vernon 2008); TEX. R. CIV. P. 167. However, before any shifting of fees and costs is permitted, the procedures set forth in the rule and the statute must be followed. If the procedures are followed, and the trial verdict is significantly less favorable than the rejected settlement offer, the rejecting party must pay the litigation costs, which includes attorney's fees, that were incurred by the offering party after the rejection. TEX. CIV. PRAC. & REM. CODE ANN. § 42.004(a). For settlement offers made by a defendant and rejected by a plaintiff, "significantly less favorable" means a verdict of less than eighty percent of the rejected offer." *Id*. § 42.004(b)(1).

First, these procedures apply only to claims for monetary damages. *Id*. § 42.002(a). The only monetary claim for which there was a settlement offer in this case was La Villita's offer to settle ORIX's breach of contract claim. Accordingly, as La Villita was the defendant as to this claim, it was the party required to comply with the procedures of Chapter 42 and Rule 167. One of the

procedures that must be followed before costs can be recovered pursuant to these provisions is that the defendant must file a declaration invoking the procedure at least forty-five days before trial. TEX. CIV. PRAC. & REM. CODE ANN. § 42.002(c); TEX. R. CIV. P. 167.2(a). Here, La Villita did not invoke these procedures until it filed its first amended petition and answer to ORIX's counterclaim on June 18, 2009, which was only thirty-two days before the trial began on July 20, 2009. Additionally, the defendant must make a settlement offer after the declaration is filed. TEX. R. CIV. P. 167.2(e)(1). La Villita did not make any settlement offers after it invoked the fee-shifting provisions. The settlement offer introduced into evidence was dated June 3, 2009, before the first amended petition invoking the provisions was filed. Moreover, the June 3rd settlement offer did not state it was made pursuant to Chapter 42 or Rule 167, as required. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 42.003(2); TEX. R. CIV. P. 167.2(b)(2). Finally, the June 3rd settlement offer includes claims for indemnity and release, and the statute and rule provide non-monetary claims may not be included in a settlement offer. *See* TEX. R. CIV. P. 167.2(d).

Most importantly, the verdict was not "significantly less favorable" than La Villita's settlement offer. La Villita offered to settle the breach of contract claim for $6,250,000.00. The trial court found La Villita owed $6,052,066.52, after applying the money in the registry of the court to the debt. This award is obviously not less than eighty percent of the settlement offer rejected by ORIX. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 42.004(b)(1).

Clearly, La Villita did not comply with the procedures mandated under the statute and the rule for obtaining fee-shifting based on a settlement offer, and the verdict was not significantly less favorable than the rejected settlement offer. Accordingly, these provisions cannot form a basis for recovery of attorney's fees by La Villita.

Finally, ORIX argues La Villita was not entitled to recover fees pursuant to section 38.001 of the Texas Civil Practice and Remedies Code. We agree. As previously noted, section 38.001(8) provides that a prevailing party who recovers damages on a claim for breach of an oral or written contract may recover reasonable attorney's fees. *Id*. § 38.001(8). Although La Villita pled a breach of contract claim and sought attorney's fees under section 38.001 in its live pleading, La Villita did not recover on a breach of contract claim, nor did it seek relief based upon any of the other provisions in section 38.001 allowing recovery of attorney's fees.

Based on our rejection of any basis for recovery of attorney's fees, we sustain ORIX's issue as to any recovery of attorney's fees by La Villita.

**Issue Five: Is there legally and factually sufficient evidence to support La Villita's claims for negligent misrepresentation, fraud, breach of contract, breach of the duty of good faith, and an accounting, and did La Villita plead or prove a claim for tortious interference?**

This issue is resolved quite simply: the trial court did not enter judgment or any findings or conclusion based on La Villita's claims for negligent misrepresentation, fraud, breach of the duty of good faith, or an accounting. Accordingly, given the absence of any recovery or findings as to these causes of action, we need not address the sufficiency of the evidence to support them.

**Issue Six: Is there legally and factually sufficient evidence to support La Villita's affirmative defenses of contributory negligence, estoppel and laches, failure to perform conditions precedent, defect in parties, failure to mitigate, failure of consideration, impossibility of performance, and ORIX's lack of capacity to recover?**

The only one of these affirmative defenses upon which a portion of the judgment might be based, or findings and conclusions might have been entered, is ORIX's lack of capacity to recover. There were clearly no findings or conclusions related to the other affirmative defenses, nor any mention of them in the judgment. Accordingly, we need only address ORIX's alleged lack of capacity.

Whether a party is entitled to enforce a note as holder or by some other sort of authority is an issue of capacity. *See Byrd v. Estate of Nelms*, 154 S.W.3d 149, 160 (Tex. App.—Waco 2004, pet. denied). By pleading lack of capacity, La Villita was asserting ORIX had no authority to recover on the Note. In its first issue, ORIX asserted it conclusively established its authority to recover on the Note. The challenge to the affirmative defense of lack of capacity is nothing more than a reassertion of the first issue. Because we have ruled in favor of ORIX on that issue, we need not revisit it here.

### Issue by La Villita: Does the acceptance of benefits doctrine preclude ORIX from bringing this appeal?

Finally, La Villita asserts that because ORIX has accepted payments under the judgment, the "acceptance of benefits doctrine" precludes ORIX from bringing this appeal, requiring that we dismiss. La Villita is incorrect.

Under the acceptance of benefits doctrine, a "'litigant cannot treat a judgment as both right and wrong, and if he has voluntarily accepted the benefits of a judgment, he cannot afterward prosecute an appeal therefrom.'" *Texas State Bank v. Amaro*, 87 S.W.3d 538, 544 (Tex. 2002) (quoting *Carle v. Carle*, 149 Tex. 469, 234 S.W.2d 1002, 1004 (1950)). Under the judgment in this case, the trial court ordered La Villita to continue to make payments of $56,874.97 to Capmark during the injunctive period. This was the amount of the monthly payments La Villita was required to pay before the balloon payment became due and it defaulted. According to La Villita, because ORIX accepted those payments, it has waived its right to appeal under the acceptance of benefits doctrine.

ORIX argues this argument is specious, and we agree. Immediately following the statement of law relied upon by La Villita for its position, the supreme court notes there is an exception to this rule that "as long as an appellant 'accepts only that which appellee concedes, or is bound to concede, to be due him under the judgment, he is not estopped to prosecute an appeal which involves only his right to a further recovery.'" *Id.* La Villita has conceded it owes more than $6 million under the Note. La Villita in fact proved it owed more than $6 million, and asked the trial court to find that this was the amount owed under the Note, as opposed to the amount claimed by ORIX. Accordingly, the exception to the acceptance of benefits doctrine is applicable: ORIX's acceptance of a few monthly payments that amount to far less than La Villita concedes is owes cannot preclude ORIX from prosecuting an appeal seeking a right to further recovery. We therefore overrule this issue.

## CONCLUSION

We hold ORIX conclusively established it was entitled to enforce the Note, and that the amount due on the note was $7,044,041.20. We render judgment for ORIX in that amount. We hold the trial court erred in refusing to award default interest and late fees, and further hold the trial court had no basis upon which to award the injunctive relief, and therefore erred in granting a permanent injunction precluding any defendant from foreclosing on the Hotel for eighteen months, precluding ORIX from ever foreclosing, and thereby giving La Villita an additional eighteen months to pay off the Note or obtain refinancing. We also hold the trial court erred in awarding La Villita attorney's fees, and given that ORIX is the true prevailing party in this matter, we hold the trial court erred in failing to award it reasonable attorney's fees. However, because the evidence was conflicting on the reasonableness of the fees, we remand the cause to the trial court for a determination of the amount of fees that should be awarded to ORIX. Accordingly, we reverse the trial court's judgment and

remand this cause for further proceedings and subsequent entry of judgment in accordance with this court's opinion.

Marialyn Barnard, Justice